UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ERIE INSURANCE COMPANY a/s/o KEVIN KNARR,** | * | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Civil Action No.: EA-22-1783 |
| | * | |
| **WAWGD, INC. d/b/a FORESIGHT SPORTS,** | * | |
| | | |
| Defendant. | * | |

**MEMORANDUM OPINION**

This matter involves a subrogation action whereby Plaintiff Erie Insurance Company, as subrogee of Kevin Knarr (Erie), sought recovery of monies it paid to its insured for property damage allegedly caused by the negligence of Defendant WAWGD, Inc., doing business as Foresight Sports (WAWGD).  ECF No. 4.  Following a settlement conference before the Honorable J. Mark Coulson, the parties agreed to settle the case for $240,000 on May 8, 2023.  ECF Nos. 49 and 52.  The Court dismissed the action pursuant to Local Rule 111 (D. Md. 2023) that same day.  ECF No. 48.  Erie subsequently filed a Motion to Vacate the Court's May 8, 2023 Order, Reopen the Case, and Enforce Settlement.  ECF No. 49.  The Court granted the portion of the motion that sought to vacate the May 8, 2023 Order and reopen the case and directed WAWGD to respond to the portion of the motion to that sought to enforce settlement. ECF Nos. 50 and 51.  The issues are fully briefed (ECF Nos. 49, 52, and 57), and no hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons set forth below, Erie's Motion to Enforce Settlement is granted and judgment in the amount of $240,000 is granted in favor of Erie against WAWGD.

**I.      Background**

It is undisputed that the parties reached an agreement to settle this action for payment of $240,000 from WAWGD to Erie.  ECF Nos. 49 ¶ 5 and 52 ¶ 2.  The settlement agreement is confirmed by emails between counsel for Erie and WAWGD, which were transmitted between 3:55 and 4:00 p.m. on May 8, 2023.  ECF No. 49-3.  The confirmation email from Erie's counsel directed WAWGD to issue the settlement draft to "Erie Insurance Company" and mail it to counsel's office, which the email footer identified as located in Philadelphia, Pennsylvania.  ECF No. 49-3 at 2.[1]  Erie's counsel also included Erie's W-9, which provided a specific employer identification number and listed a corporate address in Erie, Pennsylvania.  *Id.* at 3.

On May 31, 2023, WAWGD's insurer, The Hartford Insurance Group (The Hartford), issued a settlement draft in the amount of $240,000 payable to "Erie Insurance Company," located at the corporate address listed on the W-9.  ECF No. 49-6.  Erie claims that sometime between May 31, 2023, and June 6, 2023, The Hartford and counsel for WAWGD stopped payment on the check.  ECF No. 49 at 3.  Thus, when the check was deposited on June 8, 2023, it was not honored, and Erie did not receive the funds.  *Id.*; ECF No. 49-6 at 2.

According to WAWGD, after settlement was confirmed via email on May 8, 2023, defense counsel received an email at 5:25 p.m. that same day from someone whom he believed to be Erie's counsel but later learned was an imposter.  This email responded to the earlier email chain that confirmed the terms of settlement, included counsel for Erie's signature line, and originated from an email address that was nearly identical to that of Erie's counsel except that two letters in the law firm's name were transposed.  ECF No. 52-1 at 38-39.  The imposter asked

---

[1] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system printed at the top of the cited document.

2

WAWGD's counsel "if settlement can go out via wire transfer." *Id.* at 39.  Thereafter, email communications continued between counsel for WAWGD and the imposter regarding finalization of settlement, including exchanged edits to the settlement release and continuing discussions of the method of payment.  *Id.* at 31-38.  On May 19, 2023, WAWGD's counsel received a Settlement Agreement and General Release of Claims purportedly signed by a senior subrogation specialist at Erie.  ECF Nos. 51-2 at 31-32 and 52-2.  In the email accompanying the document, the imposter wrote that "[t]he settlement draft should be made payable by wire to 'Erie Insurance Company.'"[2]  ECF No. 51-2 at 31.  In another email sent that same day, the imposter provided wiring instructions that indicated payment should be made through Capital One Bank at 249 East 86th St., New York, NY, 10028.  ECF No. 52-1 at 28-29.

After repeated inquiries about the status of payment, on May 31, 2023, WAWGD's counsel advised the imposter that The Hartford had sent a check to Erie via U.S. mail.  *Id.* at 25-28.  The imposter then directed WAWGD's counsel to "void check and send wire."  *Id.* at 25.  WAWGD's counsel relayed the wiring instructions the imposter had provided to The Hartford.  *Id.* at 23-24.  Following receipt of numerous emails from the imposter asking about the status of the wire transfer, a litigation and claims consultant at The Hartford asked WAWGD's counsel, "Have you talked to this guy?"  *Id.* at 18.  Rather than calling Erie's counsel, WAWGD's counsel sent another email to the imposter, stating that the payment could not proceed by wire and asking for a mailing address.  *Id.* at 17.  By email dated June 5, 2023, the imposter again directed WAWGD's counsel and The Hartford to void the previous check due to "a slight error with the the [sic] previous W-9" and to issue another check to "Erie Insurance LLC" at "P.o. box

---

[2] The email had mismatched quotation marks surrounding the name of the payee, using a single quotation mark at the beginning and a double quotation mark at the end.  ECF No. 52-1 at 31.

3

9124 houston Tx 77261 [sic]." *Id.* at 16-17. The following day, WAWGD's counsel responded that it would reissue the check to Erie Insurance LLC at the identified address (*id.* at 16), and on June 8, 2023, The Hartford issued a check with those specifications (ECF No. 49-7 at 3). Thereafter, the imposter repeatedly inquired about the status of the check and requested the FedEx tracking number. ECF No. 52-1 at 3-15. In his replies, counsel for WAWGD noted, among other things, that "FedEx will not deliver to a P.O. Box, as you requested." *Id.* at 11. On June 26, 2023, the imposter asserted that the check had been lost and requested that it be reissued and sent via FedEx to a different address in Texas. *Id.* at 2. WAWGD's counsel forwarded this email to Erie's counsel and received a response from counsel's correct email address that stated, "It's not spam[.] You can proceed[.]" *Id.* at 1. Ultimately, the check The Hartford issued on June 8, 2023, was negotiated by an unidentified individual, and paid out on July 7, 2023. ECF Nos. 49 ¶¶ 28-29, 49-7 at 3, and 52 ¶ 8.

On September 19, 2023, following an investigation into the matter, WAWGD's counsel informed Erie's counsel that an imposter had sent him and The Hartford over 50 email communications in June and July of 2023 regarding settlement of this action. ECF No. 49 ¶ 25. WAWGD asserts that this imposter "created a rule on Plaintiff Counsel's original email . . . to intercept Defense Counsel's emails, automatically deleting them, and passing them to an account they created," which, as noted previously, was the same as that of Erie's counsel except that two letters were transposed. ECF No. 52 at 2. According to WAWGD, Erie's counsel "confirmed that he did not receive any of the emails from Defense Counsel . . . after the first settlement confirmation email." *Id.* The parties concur that WAWGD's counsel did not call Erie's counsel to inquire about or verify the modifications to the originally agreed upon payment instructions. ECF Nos. 49 ¶ 27, 52 ¶ 27, 57 at 6 and n.2.

Erie asserts that its counsel repeatedly requested the settlement draft throughout June, July, and August 2023, which counsel for WAWGD said would be forthcoming. *Id.* at ¶ 24. However, on October 18, 2023, WAWGD's counsel advised Erie's counsel that The Hartford would not issue a new settlement draft to Erie while it pursues separate relief against the imposter's bank. *Id.* at ¶ 31. Thereafter, Erie moved to enforce the settlement. ECF No. 49.

**II.   Discussion**

As the Court previously granted the portion of Erie's motion that sought to vacate the May 8, 2023 Order and reopen the case (ECF Nos. 50 and 51), the only remaining matter is the portion of Erie's motion that seeks to enforce the settlement agreement. It is well established that "district courts have inherent authority, deriving from their equity power, to enforce settlement agreements." *Hensley* v. *Alcon Lab'ys, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002)). A motion to enforce a settlement agreement may be resolved "within the context of the underlying litigation without the need for a new complaint." *Id.* A district court cannot, however, enforce a settlement agreement "until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." *Id.* If there is no factual dispute concerning "the existence of an agreement, over the authority of attorneys to enter into the agreement,[ ] or over the agreement's terms," the district court may enforce a settlement agreement without the need for an evidentiary hearing." *Id.* at 541; *Hewitt* v. *Dyck-O'Neal, Inc.*, Civil Action No. DKC 20-1322, 2021 WL 3784867, at *1 (D. Md. Aug. 26, 2021).

Here, the parties do not dispute that they reached an agreement on settlement of this action, the terms of the agreement, or counsel's authority to enter into the agreement. Accordingly, no evidentiary hearing is required. *Bradley* v. *Am. Household Inc.*, 378 F.3d 373, 380 (4th Cir. 2004); *Hensley*, 277 F.3d at 541. It is likewise undisputed that Erie has not

5

received the agreed-upon settlement funds because an unidentified bad actor posing as Erie's counsel intercepted and deposited the settlement draft. WAWGD argues that because "Plaintiff Counsel's email system was compromised and resulted in the malicious actors receiving the settlement proceeds duly paid pursuant to the settlement reached by the parties," WAWGD is not responsible for issuing another check to Erie. ECF No. 52 ¶¶ 9-10. Erie, on the other hand, argues that the remedy for the fraud perpetrated on WAWGD is recovery against the unidentified bad actor, not breach of the settlement agreement in this action. ECF No. 57 at 8. The issue pending before the Court, therefore, is whether WAWGD should be excused from performance under the settlement agreement because of a third party's fraudulent acts or whether the Court should require WAWGD to remit the settlement funds to Erie as previously agreed.

A.   **Contract Principles**

Enforcement of a settlement agreement is governed by "standard contract principles" because a "settlement agreement is nothing more nor less than a contract." *Davis* v. *Wash. Metro. Area Transit Auth.*, Civil Action No. TJS-23-1171, 2023 WL 7410855, at *2 (D. Md. Nov. 8, 2023); *accord Alston* v. *TowneBank*, Civil Action No. GJH-20-690, 2022 WL 971008, at *6 (D. Md. Mar. 31, 2022); *Turner* v. *Archer W. Contractors, LLC*, Civil Action No. ELH-17-2228, 2019 WL 2549433, at *5 (D. Md. June 19, 2019); *Copeland* v. *Dapkute*, Civil Action No. PWG-17-1566, 2018 WL 5619672, at *5 (D. Md. Oct. 30, 2018). Indeed, this Court has described a motion to enforce a settlement agreement as "tantamount to an action for specific performance of a contract." *Hewitt*, 2021 WL 3784867, at *1 (internal quotation marks and citation omitted). Therefore, "the party seeking enforcement must show not simply that an *agreement* was reached but that a *contract* exists." *Rohn Prod., Int'l, LC* v. *Sofitel Cap. Corp. USA*, Civil Action No. WDQ-06-504, 2010 WL 681304, at *3 (D. Md. Feb. 22, 2010) (emphasis

in original).  Under Maryland law, a contract is formed when there is "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration."[3]  *Spaulding* v. *Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013) (internal quotation marks and citation omitted).  "Mutual assent" means that there was "an actual meeting of the minds regarding contract formation."  *Lopez* v. *XTEL Const. Grp., LLC*, 796 F. Supp. 2d 693, 699 (D. Md. 2011) (quoting *Cochran* v. *Norkunas*, 398 Md. 1, 23 (2007)).

Here, following the March 31, 2023 settlement conference, the parties continued to engage in settlement discussions with the assistance of Judge Coulson, ultimately reaching an agreement on May 8, 2023.  ECF Nos. 49 ¶ 5 and 52 ¶ 2.  The agreement, terms of settlement, and consideration are set out in a series of emails between counsel for the parties that same day.  At 2:52 p.m., WAWGD's counsel emailed "we are settled for $240,000."  ECF No. 52-1 at 40.  At 3:55 p.m., Erie's counsel "confirm[ed] the settlement of Erie's property damage claim for $240,000," attached Erie's W-9, and directed WAWGD's counsel to issue a settlement draft to Erie mailed to counsel's attention.  *Id.*  WAWGD's counsel confirmed receipt at 4:00 p.m. and stated that he would advise the Court that the matter was resolved and closing documents were being prepared.  *Id.* at 39.  This exchange plainly reflects mutual assent, definite terms, and consideration, thus satisfying all the elements of a contract under Maryland law.  *E.g.*, *Lopez*, 796 F. Supp. 2d at 699; *Rohn Prods, Int'l, LC* v. *Sofitel Cap. Corp. USA*, Civil Action No.

---

[3] Some courts in this Circuit have noted that enforcement of a settlement agreement in the context of pending federal court litigation may implicate federal law rather than state law. *E.g.*, *Turner*, 2019 WL 2549433, at *5; *Montage Furniture Servs., LLC* v. *Regency Furniture, Inc.*, 966 F. Supp. 2d 519, 524 n.4 (D. Md. 2013).  It is unnecessary to resolve this question because the basic contracting principles discussed herein are the same under Maryland and federal law.  *See*, *e.g.*, *Bile* v. *RREMC, LLC*, No. 3:15-CV-51, 2016 WL 4487864, at *6 (E.D. Va. Aug. 24, 2016).

WDQ-06-504, 2010 WL 2158883, at *5 (D. Md. May 24, 2010) (Report & Recommendation), *adopted*, 2010 WL 681304, at *3 (D. Md. Feb. 22, 2010).

WAWGD's payment of $240,000 to the imposter does not constitute performance under the settlement agreement, which requires that payment be made to Erie. *Peeples* v. *Carolina Container, LLC*, No. 4:19-CV-21-MLB, 2021 WL 4224009, at *5 (N.D. Ga. Sept. 16, 2021) (finding a breach of the contract where payment was unknowingly remitted to a third-party fraudster). The emails exchanged between WAWGD's counsel and the third-party imposter after contract formation did not alter WAWGD's obligations under the settlement agreement. The reasoning of the *Peeples* court is sound:

> The Agreement is clear that Defendant Carolina must pay Plaintiff. But the hacker's emails asked Defendant Carolina to pay someone else. Faced with these conflicting instructions about a material obligation, Defendant Carolina was required to follow the Agreement.

*Id.* at *6. WAWGD was obligated to perform under the terms of the settlement agreement. A review of the emails between counsel for WAWGD and the imposter reveal that the imposter, using an email different from that of Erie's counsel, asked that payment be sent to a different entity ("Erie Insurance LLC") at a different address in a different state. Although the Court is sympathetic to WAWGD and its counsel because of the fraud that was perpetrated to their detriment, the fact remains that WAWGD did not fulfill its obligations under the terms of settlement agreement.

The emails between WAWGD's counsel and the imposter also do not render the agreement between Erie and WAWGD void. First, both Maryland and federal law favor the enforcement of settlement agreements. *E.g.*, *Jones* v. *Aetna Life Ins. Co.*, Civil Action No. ELH-19-1413, 2020 WL 1675984, at *5 (D. Md. Apr. 6, 2020) (discussing Maryland and federal cases); *Alston*, 2022 WL 971008, at *6 (noting that "public policy considerations favor the

enforcement of settlement agreements"). In fact, the "policy of encouraging settlement is so important that, even when the parties later discover that the settlement may have been based on a [unilateral] mistake, settlement agreements will not be disturbed." *McDaniels* v. *Westlake Servs., LLC*, Civil Action No. ELH-11-1837, 2013 WL 2491337, at *9 (D. Md. June 7, 2013) (alteration in original) (quoting *Nationwide Mut. Ins. Co.* v. *Voland*, 103 Md. App. 225, 237 (1995)).

Second, there is no basis upon which to find that a third party's fraudulent acts or misrepresentations after formation of the contract undermine its enforceability. Maryland law provides that "[c]ontracts may be subject to rescission on a finding of fraud, duress, undue influence, or negligent misrepresentation in their making." *Turner*, 2019 WL 2549433, at *7 (quoting *Hale* v. *Hale*, 66 Md. App. 228, 233 (1986)). Such a finding, however, must be based on an action that occurred in the *making* of the contract. This principle is in accord with the Restatement (Second) of Contracts, which provides that a contract may be voidable if "a party's *manifestation of assent* is induced by either a fraudulent or a material misrepresentation by one who is not a party to the transaction upon which the recipient is justified in relying."[4] Restatement (Second) of Contracts § 164(2) (1981) (emphasis added). Here, the uncontested facts establish that the imposter's actions had no impact upon the parties' manifestation of assent or understanding of the terms of settlement because the imposter's actions occurred after the contract had already been formed. The third party's fraudulent misrepresentations, which resulted in the diversion of the settlement draft from Erie to an unidentified bad actor, affected only performance under the settlement agreement, not its formation.

---

[4] *United States* ex rel. *Ubl* v. *IIF Data Sols.*, 650 F.3d 445, 451 (4th Cir. 2011) ("When applying federal common law to contract issues, courts generally look to the Restatement for guidance.").

The doctrine of mistake is also unavailing because it applies only to "a mistake of one party *at the time a contract was made* as to a basic assumption on which he made the contract." Restatement (Second) of Contracts § 153 (1981) (emphasis added); *see also Peeples*, 2021 WL 4224009, at *7 ("Where, as here, the parties develop a mistaken impression about something *after* they sign the contract, the Restatement's rule seems inapplicable on its face.") (emphasis in original). There was no mistake, mutual or otherwise, regarding the assumptions on which the parties here contracted to settle this action. Simply put, WAWGD has supplied no factual or legal argument that supports its position that the settlement agreement should not be enforced.

### B.     Uniform Commercial Code Section 3-404

This result is consistent with decisions of other courts, from this Circuit and elsewhere, that have examined the enforceability of settlement agreements and other contracts after a third-party fraudulently diverted payment. Several of these decisions have looked to Article III of the Uniform Commercial Code (UCC), which courts in this Circuit have cited as persuasive authority, both with respect to motions to enforcement settlement agreements and other matters. *E.g.*, *Old Stone Bank* v. *Tycon I Bldg. L.P.*, 946 F.2d 271, 273 (4th Cir. 1991); *Starr* v. *VSL Pharms., Inc.*, 509 F. Supp. 3d 417, 450 (D. Md. 2020); *Bile* v. *RREMC, LLC*, No. 3:15-CV-51, 2016 WL 4487864, at *5 (E.D. Va. Aug. 24, 2016).

Section 3-404, which applies to imposters and fictitious payees, provides that "the person bearing the loss may recover from the person failing to exercise ordinary care." UCC § 3-404(d). That is to say, if "a check payable to an impostor, fictitious payee, or payee not intended to have an interest in the check is paid," the loss is placed on the "person failed to exercise ordinary care." UCC § 3-404 Cmt. 3; *see also Beau Townsend Ford Lincoln, Inc.* v. *Don Hinds Ford, Inc.*, 759 Fed. App'x. 348, 357 (6th Cir. 2018) (holding on similar facts that "losses

10

attributable to fraud should be borne by the party in the best position to prevent the fraud"); *State Sec. Check Cashing, Inc.* v. *Am. Gen. Fin. Servs. (DE)*, 409 Md. 81, 108-17 (2009) (discussing Md. Code, Com. Law Art. § 3–404).

WAWGD's argument that Erie failed to exercise reasonable care because its email system was compromised, which "resulted in the malicious actors receiving the settlement proceeds" (ECF No. 52 ¶ 9) completely glosses over the many communications and actions that led to remittance of the settlement funds to the imposter. Based on those intervening acts, it is evident that not only was WAWDG in the best position to prevent the fraud, but that it also failed to exercise reasonable care. Counsel for WAWDG and The Hartford exchanged more than 50 emails over a two-month period with the imposter regarding issuance of the settlement draft. ECF No. 49 ¶ 25. A review of the emails submitted in connection with this motion reveals that the imposter's email address was not the same as that of Erie's counsel. While that detail may have escaped scrutiny, there were other indications that, at the very least, payment instructions should have been verified. Mostly notably, the communications regarding payment conflicted with the original instructions provided by Erie's counsel, altering the name and address of the recipient, and attempting to alter the method of payment from a check to a wire transfer. The emails also contained typographical errors and did not reflect a sophisticated understanding of how settlement payments are executed, requesting, for example, that an overnight carrier deliver to a P.O. Box.[5] Yet, no earnest effort was made to verify the payment instructions before issuing the settlement draft.

---

[5] *See Ostrich Int'l Co., Ltd* v. *Michael A. Edwards Grp. Int'l Inc.*, No. 221CV00639JVSASX, 2023 WL 4025870, at *5 (C.D. Cal. May 18, 2023) (observing that "grammatical errors and a signature block that did not identically match the actual signature" were "red flags" indicative of a fraudulent email).

This, quite simply, is not the exercise of reasonable care. *Ostrich Int'l Co., Ltd* v. *Michael A. Edwards Grp. Int'l Inc.*, No. 221CV00639JVSASX, 2023 WL 4025870, at *5 (C.D. Cal. May 18, 2023) (holding that the party that failed to carefully evaluate email addresses and telephone opposing counsel to confirm wiring instructions in the face of multiple, conflicting instructions could have more easily avoided the loss); *Jetcrete N. Am. LP* v. *Austin Truck & Equip., Ltd.*, 484 F. Supp. 3d 915, 920 (D. Nev. 2020) (finding that while the email account hack "created the scenario for the loss," the buyer "was in the best position to prevent the loss by taking the reasonable precaution of verifying the wiring instructions by phone"); *Arrow Truck Sales, Inc.* v. *Top Quality Truck & Equip., Inc.*, No. 8:14-CV-2052-T-30TGW, 2015 WL 4936272, at *6 (M.D. Fla. Aug. 18, 2015) (holding that the recipient of "e-mails containing conflicting wire instructions" who did not call "to confirm or verify the correct wire instructions" failed to exercise reasonable care).

Accordingly, under either the contractual or UCC Article III analysis, WAWGD is obligated to pay Erie the previously agreed upon amount. *Bile*, 2016 WL 4487864, at *10 ("[I]f a person has an obligation to deliver a check, and does not deliver that check due to that person's own error, then that person remains liable on the underlying obligation.").

### C. Interest, Costs, and Fees

In addition to a judgment in the amount of $240,000, Erie also seeks interest from May 2023, costs, and expenses, including reasonable attorney's fees. ECF No. 49 at 5. Erie has not, however, identified a basis upon which the Court could grant such an award. The parties' agreement to settle the case is silent regarding interest and fee-shifting in the event of a dispute. Erie does not cite any case law to support its position, nor has it provided any calculation of

costs, expenses, or reasonable attorney's fees, which "must be established by competent evidence." *Rohn Prod. Int'l, LC*, 2010 WL 3943747, at *4.  Erie's request is therefore denied.

## II.     Conclusion

In light of the foregoing, it is hereby ORDERED that the Motion to Enforce Settlement (ECF No. 49) is GRANTED.  Judgment in the amount of $240,000 is granted in favor of Erie and against WAWGD.  A separate Order will follow.

Date:  April 29, 2024                                        /s/
                                                                    Erin Aslan
                                                                    United States Magistrate Judge